UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PURCELL TIRE & RUBBER )
COMPANY, et al., )
 )
    Plaintiff/Counterclaim Defendant, )
 )
              v. ) No. 4:09CV00179 AGF
 )
MB FINANCIAL BANK, NA, )
 )
    Defendant/Counterclaim Plaintiff. )

## MEMORANDUM AND ORDER

This diversity action is before the Court on the motion (Doc. #36) of Defendant/Counterclaim Plaintiff MB Financial Bank, NA ("MB") for (1) summary judgment on the breach of contract claim of Plaintiffs/Counterclaim Defendants Purcell Tire and Rubber Co. and several related corporate entities ("Purcell"), and (2) summary judgment on MB's counterclaim for breach of contract. For the reasons set forth below, MB's motion shall be denied.

## BACKGROUND

This case arises out of MB's decision of March 26, 2008, not to close on a "permanent loan" to Purcell in the aggregate amount of $65 million that was set to close on April 7, 2008. Purcell brought this action, claiming that MB's failure to close breached the parties' January 24, 2008 Loan Commitment Letter and Term Sheet ("Commitment Letter"), and resulted in damages to Purcell of more than $3.3 million due

to Purcell's need immediately to secure a loan from another lending institution, which it did but at less favorable terms than those promised by MB.

The Commitment Letter at issue stated, "MB . . . is pleased to issue its commitment . . . to provide financing to Purcell . . . with respect to the refinancing of Purcell's . . . existing bridge [loan of $35 million from MB] and potential acquisition activities." The financing MB committed to provide was comprised of a $25 million line of credit, to be secured by "a perfected security interest in all of the assets of [Purcell]; a $30 million term loan, and a $10 million "acquisition line of credit," each to be secured by "a perfected first lien on all assets of [Purcell]." The Commitment Letter also stated as follows:

> This letter summarizes the Bank's willingness to provide financing to the Borrower. This letter is not intended to be all-inclusive: rather it is intended to establish guidelines for the drafting of documents by the Bank's counsel evidencing this transaction. The Commitment is expressly subject to legal due diligence and satisfactory documentation as determined by the Bank and the Bank's counsel in its sole judgment. Please be advised that the legal due diligence performed by the Bank's counsel could lead to changes to the attached summary. No other party may rely on the contents of this letter in any way.
>
> This Commitment supercedes all prior understandings, agreements and proposals between the Bank and the Borrower related to the transaction contemplated hereunder, whether written or oral.

(Def. Ex. N.) The Commitment Letter further provided that its terms "may not be waived or modified unless such waiver or modification is expressly stated as such and specifically agreed to by the parties in writing, and shall be enforceable by [MB] . . . ." Id. at 7. Purcell accepted the terms of the Commitment Letter.

Two of the affirmative defenses asserted in MB's answer are that Purcell failed to state a claim because the Commitment Letter did not constitute an enforceable contract, and that Purcell's claim is barred due to Purcell's failure to provide MB with perfected first liens as required by the Commitment Letter. MB also filed a two-count counterclaim alleging in Count I that Purcell, by promising to provide MB a perfected first lien in all of Purcell's assets and then not doing so, had fraudulently induced MB to close the prior 2007 bridge loan to Purcell in the amount of $35 million and to negotiate the terms of the Commitment Letter, resulting in damages to MB. MB's asserted damages are (1) the difference between the amounts charged for the 2007 bridge loan based on the belief that Purcell would provide the perfected first lien and the amounts MB would have charged "in light of the actual risk that was undertaken by MB Financial when Purcell failed to provide the required liens," (2) MB's attorney's fees and other costs incident to negotiating the 2008 Commitment Letter, and (3) MB's fees and costs associated with the present lawsuit.

In Count II of its counterclaim, MB claims that by failing to provide the perfected lien in all of Purcell's assets, Purcell breached the 2007 bridge loan agreement, resulting in the same damages to MB as those claimed in Count I.

It is undisputed that at all relevant times, Purcell had approximately $30 million in inventory, of which approximately $21 million was subject to purchase money security liens ["PMSL"] in favor of the suppliers of this as yet unpaid-for inventory, and that this was known to MB. Viewing the evidence in the light most favorable to Purcell, as the

Court must do at this stage, during the parties' relationship prior to the Commitment Letter, MB waived the requirement that Purcell provide perfected first liens on the inventory that was subject to the PMSLs. More importantly, again viewing the evidence in Purcell's favor, a fact question is presented on whether this waiver was reaffirmed orally and in a series of emails between the parties after the date of the Commitment Letter.

On April 30, 2008, MB sent a letter to Purcell stating that upon Purcell's repayment of the 2007 bridge loan, "[a]ll of [Purcell's] outstanding obligations shall be satisfied in full and all indebtedness of [Purcell] for credit extended under the [2007 bridge loan] shall be fully paid and discharged," and that "[a]ll security interests, pledges and other liens granted to or held by [MB] as security for [Purcell's] obligations shall be forever satisfied, released and discharged." (Pls. Ex. 17.) Purcell timely repaid the 2007 bridge loan in full on May 2, 2008, and MB thereafter released its security for Purcell's obligations under the 2007 bridge loan.

## ARGUMENTS OF THE PARTIES

MB argues that it is entitled to summary judgment on Purcell's breach of contract claim because (1) the Commitment Letter is not an enforceable contract to extend the $65 million loan, but rather was nothing more than a qualified agreement to consider extending a loan, and (2) Purcell failed to satisfy a condition precedent contained in the Commitment Letter, namely to provide MB with a perfected first lien on all assets of Purcell as collateral for the $65 million loan. MB argues that parol evidence is not

admissible to contradict the plain language of the Commitment Letter setting out this condition precedent; and that, in fact, there was no waiver of the condition precedent because the requirements for a waiver set out in the Commitment Letter were never met.

With respect to its counterclaim, MB argues that this same failure by Purcell to provide MB with a perfected first lien on all assets of Purcell, which was in breach of Purcell's promises to MB in connection with the 2007 bridge loan, entitles MB to summary judgment on Count II of MB's counterclaim for breach of the 2007 bridge loan agreement.

In opposition to MB's motion for summary judgment on Purcell's claim, Purcell argues that a condition precedent in a contract can be waived by the conduct of the contracting parties, and that a contract provision requiring a waiver of its terms to be in writing can itself be waived by the words or deeds of the parties. Purcell argues that the evidence creates a disputed fact issue at to whether MB waived the requirement that Purcell present MB with a perfected first lien in all of Purcell's inventory, i.e., including the inventory that was subject to the PMSLs.

In opposition to MB's motion for summary judgment on its counterclaim for breach of the 2007 loan agreement, Purcell argues that the claim is defeated by the fact that Purcell repaid the 2007 bridge loan in full, and pursuant to the terms of MB's letter of April 30, 2008, written when MB knew that Purcell had not provided a perfected first lien in all its inventory, MB thereupon released any and all claims MB might have had against Purcell with regard to that loan. Purcell argues that "MB is trying to go back and

5

retroactively impose a higher interest rate for a loan that has already been totally paid off." Purcell further asserts that this theory of recovery is "so flawed" and MB's showing supporting the claim "woefully inadequate," such that the Court should sua sponte grant Purcell summary judgment on this counterclaim.

In its reply, MB reiterates its argument that Purcell cannot prove a valid waiver that would excuse the admitted failure to provide MB with the perfected first liens. MB argues for the first time that both Illinois and Missouri statutory law prohibit the oral modification of an existing credit agreement. MB also argues for the first time in its reply that it is entitled to summary judgment on its counterclaim for breach of contract because Purcell waived the affirmative defenses of accord and satisfaction, payment, and or release.

## DISCUSSION

**Summary Judgment Standard**

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); First S. Co. v. Jim Lynch Enterps., Inc., 932 F.2d 717, 718 (8th Cir. 1991). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. United Fire & Cas. Co. v. Gravette, 182 F.3d 649, 654 (8th Cir. 1999). In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party and that party must be given the benefit of all reasonable inferences that can be drawn

from the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation ommited).

**Choice of Law and Application of State Law**

It is undisputed that Illinois law governs MB's counterclaim.  With regard to Purcell's claim against MB, the parties spend time in their briefs arguing about whether Missouri or Illinois law governs, with MB arguing that Illinois law applies and Purcell maintaining that Missouri law applies.  But the parties essentially recognize, as does the Court, that the results of the issues before the Court would be the same under either state's law.  Accordingly, while the Court finds MB's arguments in favor of Illinois law rather persuasive, the Court need not, at least at this point in the proceedings, resolve the choice of law question.

In looking to the law of both states, this Court notes that "[i]f the [state supreme court] has not spoken on an issue, the federal court must determine what decision the state court would make if faced with the same facts and issue.  The federal court should consider relevant state court decisions, analogous decisions, considered dicta, and any other reliable data." Myers v. Lutsen Mountains Corp., 587 F.3d 891, 896 (8th Cir. 2009) (citation omitted).

**Enforceability of the Commitment Letter**

The Court finds MB's argument that the Commitment Letter was not an enforceable contract to extend the $65 million loan unpersuasive.  The Court believes that the Supreme Courts of Illinois and Missouri would hold that the Commitment Letter is an

7

enforceable contract. Under Illinois law, "loan commitments are contracts." In re Gyncor, Inc., 251 B.R. 344, 353 (Bankr. N.D. Ill. 2000). In a case factually similar to the present case, the Illinois appellate court held that a bank's loan commitment letter which promised to loan a considerable amount of money if certain conditions were met and which was accepted by the borrower created a contract between the parties. McKee v. First Nat'l Bank of Brighton, 581 N.E.2d 340, 343 (Ill. Ct. App. 1991). Missouri courts also recognize that loan commitments similar to the one involved here are enforceable contracts. See City of Kansas City, Mo. v. Housing & Econ. Dev. Fin. Corp., No. 05-00368-CV-W-GAF, 2008 WL 320535, at *4 (W.D. Mo. Feb 4, 2008) (enforcing a loan commitment letter); Cont'l Assur. Co. v. Van Cleve Bldg. & Const. Co., 260 S.W.2d 319, 324 (Mo. Ct. App. 1953) (holding that an agreed-upon commitment to make a loan was an enforceable contract).

MB relies on a 1988 case from the Seventh Circuit, Runnemede Owners, Inc. v. Crest Mortgage Corp., 861 F.2d 1053 (7th Cir. 1988), which held, applying Illinois law, that a mortgage company did not enter into an unqualified commitment to extend a loan where, in a letter to a would-be-borrower, it promised to advance $5.5 million for the purchase of a hotel, but only if financial data submitted by the borrower was judged sufficient in the mortgage company's sole discretion. The letter specified that within seven days after receipt of all the data required, the mortgage company would notify the borrower "of the company's intention to fund or not to fund pursuant to the terms hereof," and stating that the form and content of the commitment letter was subject to the

8

company's loan committee's approval. The court held that the mortgage company's letter was just a promise to consider extending loan. Id. at 1056. The court found it significant that the mortgage company had expressly refused to enter into a binding obligation to fund the loan until such time as it had completed its pre-closing investigation before giving final approval to the loan. Id.

This Court believes that the facts in Runnemede are distinguishable and that under the facts of the present case, the Illinois Supreme Court would hold that the Commitment Letter constituted an enforceable contract. See Wells Fargo Bank, N.A. v. U.S., 88 F.3d 1012, 1020 (Fed. Cir. 1996) (distinguishing Runnemede based on the qualified and conditional nature of the mortgage company's letter).

**Waiver of the Condition Precedent in the Commitment Letter**

Purcell recognizes that its failure to provide perfected first liens in all its inventory would be fatal to its breach of contract claim, unless that requirement was waived. Under Illinois law, "a party may waive a provision placed in a contract for its benefit by conduct establishing that it does not intend to insist on compliance with the provision. Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1275 (7th Cir. 1996). Such waiver may include waiver of a condition precedent. See LaSalle Nat'l Bank v. Met. Life Ins. Co., 18 F.3d 1371, 1375 (7th Cir. 1994). Missouri law provides so too. See McNabb v. Barrett, 257 S.W.3d 166, 174 (Mo. Ct. App. 2008) (citation omitted) ("[A] party may waive any condition in a contract in the party's favor, and the waiver may be implied from conduct.")

9

Further, as Purcell argues, both states recognize that a contract provision requiring a waiver of its terms to be in writing can itself be waived by the words or deeds of the parties. See U.S. Neurosurgical, Inc. v. City of Chicago, 572 F.3d 325, 332 (7th Cir. 2009) (applying Illinois law); DeMean v. Ledl, 796 S.W.2d 415, 419 n.5 (Mo. Ct. App. 1990).

Both states impose a heavy burden of proof upon a party claiming a waiver of a contractual right. See In re Nitz, 739 N.E.2d 93, 103 (Ill. Ct. App. 2000) (stating that a party claiming a waiver carries the burden of "proving a clear, unequivocal, and decisive act of its opponent manifesting an intention to waive its rights"); Howe v. Lever Bros. Co., 851 S.W.2d 769, 775 (Mo. Ct. App. 1993) (citation omitted) ("[T]o rise to the level of a waiver, the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of their conduct is possible.").

The Court concludes that here, the evidence raises a genuine issue of a material fact as to whether MB waived the security liens requirement after the Commitment Letter was agreed to. This precludes the grant of summary judgment to MB on Purcell's breach of contract claim.

The two statutory provisions relied upon by MB in its reply are the Missouri Credit Agreement Statute of Frauds, Mo. Rev. Stat. § 432.045, and the Illinois Credit Agreements Act, 815 ILCS 160/2, 3. As a general rule, courts will not consider arguments raised for the first time in a reply. Green v. Missouri, 734 F. Supp. 2d 814,

848 (E.D. Mo. 2010). In any event, the Court does not believe that these statutes preclude Purcell's action which is based on a written credit agreement. MB has provided no case authority that either Act precludes a borrower seeking to enforce a written credit agreement from proving that a condition precedent to the lender's obligation was waived by the lender orally, by conduct, and/or by email correspondence.

**MB's Claim for Breach of the 2007 Bridge Loan Agreement**

The existence of a genuine issue of a material fact on whether MB waived the security liens requirement also precludes the grant of summary judgment to MB on it's breach of contract counterclaim. The Court declines to grant Purcell summary judgment on this counterclaim sua sponte.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that MB Financial Bank, NA's motion for summary judgment on Purcell Tire & Rubber Co.'s complaint and on Count II of MB Financial Bank, NA's counterclaim is **DENIED**. [Doc. #36].

**IT IS FURTHER ORDERED** that a trial date shall be set by separate Order.

*/s/ Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2011.